Eunkin, Cn.,
dissenting. The facts of this case are substantially as follows : The sum of five thousand three hundred and thirty-nine dollars is now in the hands of the Sheriff of Union District, arising from the sales under execution of the property of Stephen J., Ashby. The amount apparently due to the eldest execution creditors exceeds.eight thousand dollars; Of this amount,.about one-half is claimed by the defendant, John Ashby,'who, in 1851, obtained a rule against.the Sheriff, to show cause why he did not pay over as much as was necessary to satisfy his demand. In January, 1852, the other execution creditors filed 'this bill, alleging that the demand of John Ashby was wholly fictitious and fraudulent; and they have established their allegation to the entire satisfaction of every member of the Court. Such was the announcement of the Appeal Court at the former hearing; and, in the decree of the Circuit Court recently made, the Chancellor uses this language : “ I have again heard this case upon the same proofs which were before the former Chancellor, and upon additional proofs, and there is no doubt on my mind; there can be none on any mind — that the fraud is fully made out. John Ashby never was able to loan money to his brother, or any body else. He was destitute of credit, always embarrassed, idle, dissipated, drunken, and addicted to low gaming” — and the Chancellor concludes by expressing his “ desire to over.turmhis fraudulent claim if the law would pterm'it it” But the Chancel-; lor was of opinion that the statute'of limitations precluded'the *446 plaintiffs from obtaining the interference of the Court to stay the hand of the defendant.
The judgment to the defendant, John Ashby, as well as to the plaintiffs, was confessed 9th March, 1843. There were other and elder executions in the Sheriff’s office against the debtor, Stephen J. Ashby. His property was levied on and sold at various times between 1844 and January, 1847. According to a statement furnished by the Sheriff, the property of the defendant was then exhausted, and the balance of five thousand three hundred and thirty-nine dollars was in his hands after satisfying the admitted prior liens. But among the executions in his office against S. J. Ashby was one against him as surety of D. A. Thomas to De Graffenreid, which was to a large amount, was elder than the execution of March, 1843, and was apparently unsatisfied. The creditors of Thomas insisted that the judgment of De Graffenreid was paid, and a litigation was then pending on the subject, which was not terminated until 1851, when the Court held that nothing was due on De Graf-fenreid’s judgment, and consequently the balance in the Sheriff’s hands was no longer liable to this claim. The exact amount of the De Graffenreid execution does not appear, or whether it would, or would not, have absorbed the balance in the Sheriff’s hands if the execution had been in truth unsatisfied. It does not appear from the evidence that, while the money was in the Sheriff’s hands pending the controversy as to the De Graffenreid execution, any injunction was issued to restrain him from paying to the junior executions, nor would any seem to have been necessary; nor, on the other hand, is there any evidence of any demand on him by the junior execution creditors until the result of the controversy was ascertained in 1851, when the rule on the part of the defendant, John Ashby, was taken out.
In an evil day for the plaintiffs, they took the trouble to apply to this Court. If, when John Ashby took out his rule against the Sheriff, the plaintiffs had also taken out a rule, as permitted by the Act of 1821, to test the validity of John *447 Ashby’s lien, it might have been summarily and promptly decided by a court and jury. It was so ruled in Posey vs. Underwood, 1 Hill, 262, where an attaching creditor was permitted to file a suggestion impeaching a judgment on the ground that it was fraudulent and not founded on a bond fide consideration, and the plaintiff, in the confession of judgment, was required to plead by a thirty day rule. But Sutton vs. Pettus, 4 Rich. 163, is still more significant. The judgment was entered by confession in October, 1830. The plaintiff had issued a scire facias to revive the judgment, and at Spring Term, 1849, Sutton, who had, in 1846, become a purchaser from the defendant in the execution, resisted the application, and obtained an order to impeach the judgment of 1830 as fraudulent and not founded on bond fide consideration. The plaintiff in the judgment filed his plea, and upon the issue made up, the jury found against him. Various objections were made in the Appeal Court to the verdict thus rendered. Among others, it was said that the judgment was on record, and Sutton must, therefore, have purchased with notice. The reply of the Appeal Court is, that, “ upon the foundation of the verdict of the jury, Sutton is entitled to say that the judgment he assails is no judgment at. all as to him: that, if he had notice of its existence, he had notice also, and at the same time, that it was fraudulent and void.” No one seems to have supposed that the rights of Sutton would be impaired, or in any manner affected, by his knowledge of the mere existence of a lien which he at the same time knew to be fictitious. Nor was the inherent infirmity of the lien in any manner improved by the length of time during which it was permitted to lie dormant. Sutton interposed (not when he first knew of the fictitious character of the judgment, for, say the Court, he knew that it was fraudulent so soon as he knew of its existence, but) so soon as the attempt to revive and enforce this fraudulent lien interfered with his rights — and this is the true test. It is not enough that the transaction may be tainted with fraud and may be so *448 known to the community. No third person can impeach it until his own interests are .attacked. ' Until that time he has no cause of action, and the statute can never commence to run until his rights are assailed, and he has knowledge of the fraudulent character of the attack. '
Now, as between' John Ashby and his brother, Stephen J. Ashby, the judgment, though gratuitous, was valid.: If the property of the debtor was. sufficient to satisfy, the plaintiffs as well as John Ashby, they would have no cause to complain.
The amount of their joint demands, at-the date ofthe judgment, was six thousand two hundred and thirty-two dollars, and ninety-six cents. In;March, 1843, the plaintiffs had reason to suppose that the property was sufficient; for although it was sold at the Sheriff’s block, and previous liens satisfied, the surplus in January, 1847, vf&sfive thousand three hundred and thirty-nine dollars. At that time, and from that time, the fund was in the hands of, the Sheriff, and is there now. . All had a common interest-to-defeat .the De Graffenreid execution, and until the result was known, the rights of the junior execution creditors could not be ascertained. In the meantime, no proceedings had been taken by the defendant against the Sheriff. So soon as. that, lien was removed and the defendant moved against the Sheriff, these, proceedings were promptly instituted. Although the plaintiffs may always well have suspected and confidently believed that nothing was, in fact, due to the defendant by Stephen J. Ashby, yet they did hot know that the enforcement of his demand would interfere with their interests; until the debtor’s property was exhausted; nor could they know the extent of their claim, if any, until De Graffen-reid’s lien was removed. As has been elsewhere said, the statute of limitations does not, in terms, apply to suits in this Court. What laches can be justly imputed to the plaintiffs ? What repose of the defendant is sought to he disturbed ? What quiet possession to be interrupted by the action of this Court ? He is actively endeavoring by means of his legal process, to *449 obtain possession of funds to which he has not the shadow of right, and his monstrous fraud against the honest creditors of his brother and confederate in guilt will not be,' in truth,- consummated until, by the judgment in this cause, the fraud shall be declared not open to inquiry, and the fund shall pass into his hands. - •
I am of opinion that the plea of the statute has no application and should be overruled, and that the defendant, John Ashby, should be enjoined in his proceedings against the sheriff, and that the funds in the hands of the sheriff, should be paid to the plaintiffs so far as may be necessary to satisfy their demands. '

Decree affirmed.